**Judge Hellerstein** IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**07 CIV 9459**

jWIN Electronics Corporation,    )
                                  )
                    Petitioner,   )    Case No. _____
                                  )
        vs.                       )
                                  )
iCube Corporation, iCube America Corp.,  )    OCT 2 3 2007
and iCube America Corporation,    )    U.S.D.C. S.D.N.Y.
                                  )    CASHIERS
                    Respondents.  )
                                  )

## NOTICE OF PETITION AND PETITION TO COMPEL ARBITRATION

Please take notice that on the date and at the time set by this Court, the undersigned shall

appear before the United States District Court for the Southern District of New York and present

jWin Corporation's Motion to Compel Arbitration.

Petitioner jWin Electronics Corporation ("jWin") and Respondents iCube Corporation,

iCube America Corp., and iCube America Corporation (collectively, "iCube") entered into an

ODM Supply Agreement ("Supply Agreement") on November 30, 2006. Pursuant to the

arbitration clause in the Supply Agreement, jWin served a written demand for arbitration upon

iCube on September 25, 2007. In light of iCube's ongoing refusal to respond to jWin's demand

for arbitration, jWin hereby requests an Order from this Court compelling iCube to submit to

arbitration. jWin also requests this Court to designate and appoint an arbitrator in light of the

ODM Supply Agreement's failure to designate an arbitrator or arbitral body.

Dated:  October 23, 2007

Respectfully submitted,


Abigail Diaz-Pedrosa
KIRKLAND & ELLIS LLP
153 East 53rd St.
New York, NY 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Jenny N. Lee (JL 7846)
KIRKLAND & ELLIS LLP
555 California Street, Ste. 2700
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Attorneys for jWIN Electronics Corporation*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| jWIN Electronics Corporation, | ) |
| | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) |
| | ) |
| iCube Corporation, iCube America Corp., | ) |
| iCube America Corporation, | ) |
| | ) |
| Respondents. | ) |
| | ) |

Case No. _____

**PETITION TO COMPEL**
**ARBITRATION PURSUANT TO**
**PARTIES' AGREEMENT**

Pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, petitioner jWIN Electronics Corporation ("jWIN") submits this Petition to Compel Arbitration Pursuant to Parties' Agreement ("Petition") with the Respondents iCube Corporation, iCube America Corp., iCube America Corporation (collectively, "iCube") before a Court-appointed arbitrator.

## PARTIES, JURISDICTION AND VENUE

1.      Petitioner jWIN is a New York corporation with its principal place of business in Port Washington, New York.

2.      Respondent iCube is a South Korean corporation with its principal place of business is in Seoul, Korea.

3.      This Court has subject matter jurisdiction over this petition pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of costs and interest.

4.      Venue is appropriate in this district under 9 U.S.C. § 4 because under the FAA, a party seeking to compel arbitration is required to file a petition in a United States district court which would otherwise have jurisdiction under Title 28.

## THE PARTIES' AGREEMENT TO ARBITRATE

5.      On November 30, 2006, jWIN and iCube executed an ODM Supply Agreement ("Supply Agreement").  A copy of the Supply Agreement is attached as <u>Exhibit A</u>.

6.      Section XII of the Supply Agreement states, "This Agreement and performance hereunder shall in all respects be governed by the laws of State of New York, U.S.A.  Any controversy or claim arising out of relating to this Agreement or the breach thereof shall be settled exclusively by arbitration process effective in the State of New York." *See* Ex. A, Sec. XII.

7.      The Supply Agreement provides no other restrictions or conditions precedent prior to the institution of arbitration between the parties.

## JWIN'S DEMAND FOR ARBITRATION

8.      During 2007, jWIN received from iCube products for re-sale pursuant to the parties' Supply Agreement.  These products proved to be defective.  jWIN's attempts to address iCube's failure to comply with material terms of the Supply Agreement have been unaddressed and unresolved to date.  jWIN has suffered harm in an amount exceeding $500,000, exclusive of costs and interest.

9.      On September 25, 2007, jWIN's attorney sent to iCube a demand for arbitration pursuant to Section XII of the Supply Agreement.  A copy of this letter is attached as <u>Exhibit B</u>.

10.      iCube's corporate headquarters in Seoul, Korea received jWIN's demand for arbitration on September 28, 2007.  A copy of the Federal Express tracking record is attached as <u>Exhibit C</u>.

## RELIEF SOUGHT

WHEREFORE, petitioner jWIN respectfully requests an order of this Court compelling respondent iCube to enter into arbitration with jWIN, pursuant to the terms of the Supply Agreement and 9 U.S.C. § 4.  In addition, petitioner jWIN requests this Court to appoint an arbitrator, pursuant to 9 U.S.C. § 5.  In particular, petitioner respectfully suggests that the Court appoint Abigail Pessen, a neutral, experienced mediator with Mediation Services (80 Broad Street, 30th Floor, New York, NY 10004), as the arbitrator in this dispute.

Dated:  October 23, 2007

Respectfully submitted,

Abigail Diaz-Pedrosa
KIRKLAND & ELLIS LLP
153 East 53rd St.
New York, NY 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Jenny N. Lee (JL 7846)
KIRKLAND & ELLIS LLP
555 California Street, Ste. 2700
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Attorneys for jWIN Electronics Corporation*

3

# Exhibit A



# jWIN®

Quality is Everything!™

2 Harbor Park Drive
Port Washington, NY 11050
Tel: 516-626-7188
Fax: 516-626-7105
www.jwin.com

**jWIN Electronics Corporation**

## ODM Supply Agreement

This Agreement is made and entered into 30day of __Nov__ , 200_ by and between jWIN Electronics Corporation., a New York company, having its principal place of business at 2 Harbor Park Drive, Port Washington, NY 11050 (hereinafter referred to as "jWIN" or the "Company") and iCube Corporation (the "Vendor" or "iCube") having the principal place of business at 25F Specialty Construction Center, 395-70 Shindaebang-Dong, Dongjak-Gu, Seoul 156-714, Korea. In consideration of the promises and mutual covenants and agreements herein contained, the parties hereto agree as follows:

## RECITALS

WHEREAS, jWIN proposes to obtain custom manufactured consumer electronics products, accessories, and other related goods as specified from time to time from the Vendor; and

WHEREAS, Vendor proposes to procure, fabricate, and manufacture consumer electronics products, accessories, and other related goods as specified from time to time at its or its 3rd party's facilities, utilizing design and quality inputs supplied by jWIN or proposed by the Vendor.

In case where the terms and conditions of the Purchase Order conflict with the terms and conditions of this Agreement, the terms and conditions of the Purchase Order shall prevail.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, jWIN and Vendor hereby covenant and agree as follows:

**I.    jWIN ELECTRONICS CORPORATION PROJECT**
It is agreed that Vendor shall manufacture the product(s) (hereafter referred to 'Product(s)') as specified in the Attachment A, and related parts and accessories and After Sales Services exclusively in the territories for jWIN.

**II.    MARKET TERRITORY**
Refer to the Attachment A for a complete list of territory and products information.

**III.    QUALITY RELATED TERMS**
(a)    jWIN and the Vendor together shall determine the quality requirements under this Agreement as defined by technical documents (drawing, diagrams, etc). The Vendor acknowledges that jWIN built up a market reputation for providing quality products, and shall use best efforts to meet jWIN's expectations to provide the highest quality products. jWIN provided Vendor Guidebook is hereby incorporated and made a part of this Agreement as Exhibit A.
(b)    Rules and standards: MIL 105 standard 1050 level II.
(c)    AQL:    Critical = 0;    Major = 1.0;    Minor = 2.5.
(d)    The Vendor shall provide reference sample(s) to jWIN for approval on timely basis, and follow through on jWIN requests for changes and shall cooperate fully with jWIN to reduce the lead-time from Purchase Order to Delivery date. The Vendor shall timely provide relevant documentations requested by jWIN for jWIN's review.
(e)    Any changes or modifications to the sample(s) and Product(s) shall be mutually agreed to by both jWIN and the Vendor in writing as stated in this Agreement, and accordingly the Vendor shall supply new documentations reflecting changes in a timely manner.
(f)    The Vendor agrees that all required regulatory approvals and certifications, including but not limited to: CE, FCC and UL have been obtained and are current and that the Vendor shall supply jWIN with supporting documents upon request. If required, the Vendor shall obtain, procure or secure appropriate regulatory approvals, certifications, licenses, etc. The Vendor guarantees and warrants to jWIN that the contractual goods comply with all government standards and requirements. The Vendor guarantees and warrants that the contractual goods comply with non-related third parties permissions, licenses, or certifications as applicable to the Product. The cost to get the aforementioned needed

_P.K._

# jWIN®

Quality is Everything!™

2 Harbor Park Drive
Port Washington, NY 11050
Tel: 516-626-7188
Fax: 516-626-7105
www.jwin.com

**jWIN Electronics Corporation**

certifications and/or regulatory approvals except FCC, UL and CUL shall be paid by jWIN. The Vendor shall at its cost obtain, procure or secure appropriate regulatory approvals, certifications, licenses such as FCC, UL and CUL.

(g)     jWIN may execute the Incoming Inspection within thirty (30) calendar days after the custom clearance date. If the Product is found not to comply with jWIN's AQL during that period, jWIN may request the Vendor to take the Incoming Inspection of the Product(s) of a specific lot of merchandise thoroughly on expedited basis.

(h)     Overall failure rate over five (5) % of the total of the Product(s) shall be considered a Catastrophic Failure. The related cost to repair a Catastrophic Failure shall be the responsibility of Vendor, including transportation, labor and parts. If the Vendor and jWIN cannot come to an agreement regarding quality of a specific lot of merchandise, then a neutral and independent party shall be asked to inspect the lot in question, and the cost of third party service shall be paid by the party whose assessment of the quality of the lot was incorrect.

(i)     The Vendor shall not replace, switch, or source inferior quality components to manufacture the Product(s) without prior written notice to jWIN. If in case inferior quality components are discovered in finished Product(s), jWIN reserves the right to cancel this Agreement for breach, withhold any pending payment, and require the Vendor, at its cost, to recall the Product(s) worldwide and either replace the whole Product unit, OR at its cost, replace the inferior quality components and arrange to ship back to consumers. In case the Vendor refuses to remedy, or otherwise fails to cure breach of this section, jWIN shall reserve the right to recall the Product(s) worldwide, engage another manufacturer to replace the inferior quality components, and ship the refurbished Product(s) to consumers, for all of which jWIN shall seek compensation from the Vendor. jWIN shall also be entitled to receive treble damages from the Vendor in case of a breach and failure to remedy such breach within thirty (30) days of written notification from jWIN. The damages under this Section shall be the sum of the cost of recalling the Product(s) worldwide, fee(s) associated with engaging another manufacturer to replace inferior quality components, shipping cost to send the repaired Product(s) to consumers, and any loss of profit suffered by jWIN due to the breach.

(j)     If vendor and jWIN cannot come to an agreement regarding quality of a specific lot of merchandise, then a neutral and independent party shall be asked to inspect the lot in question, and the cost of third party service shall be paid by the party whose assessment of the quality of the lot was incorrect.

(k)     The Vendor acknowledges and agrees that passing of Sample Quality Inspection neither relinquish nor diminish vendor's obligations to provide and honor Warranty and Support in its entirety.

(l)     The vendor hereby acknowledges and accepts that it shall not offer to give any gifts or payment to jWIN employee(s) performing inspections and quality testing, in order to avoid any impropriety or appearance of impropriety.

(m)     Failed Quality Inspection Charge Schedule: To ensure the quality of the Products, and to prevent jWIN's Quality Control Team from making unnecessary inspection visits, jWIN and the Vendor hereby agree to the following charges:

| Inspection Visit | Type of Failure(s) | Charge / Penalty |
|---|---|---|
| First Inspection | No Products Ready for inspection | HK$500.00 |
| Second Inspection | Failed Quality Inspection, Requiring Third Visit | HK$1,000.00 (plus air fare + hotel) |
| Third Inspection | Failed Second Inspection, Requiring    Another Visit | HK$2,000.00 (plus air fare + hotel) |
| Final Inspection | Failed Quality Inspection | Cancellation of related Purchase Order |

## IV.    WARRANTY

(a)     Vendor warrants to jWIN that all Products purchased by jWIN hereunder meet the specifications agreed by both parties and are free from failure or defect in workmanship and materials. The warranty applied for a period of twelve (12) months ("In-Warranty period") from the shipment date. jWIN and Vendor shall determine the Major Defect/Failure according to the Product Specification agreed by both parties, and those shall be limited to the matters of Product(s) Functionality and Cosmetics. Also, the expense shall be limited to the amount proved by real expenditure.

(b)     If, during the aforesaid Warranty Period, jWIN identifies any failure or defect that contributed by vendor including but limited to design, software, component, and / or   manufacture of the product, jWIN shall give vendor a written notice thereof, setting forth the nature of failure and/or defect. The parties agree to thereafter negotiate in good faith to replace, repair or otherwise correct such defective product. [Expect Provision under Warranty Section (c)]

(c)     At any time jWIN identifies any major defect or failure that contributed by vendor including but limited to design, software, component, and / or manufacture of product, jWIN reserves the right to return the defective units to vendor for full refund. Refund must also include but not limited all cost attributed to transportation and other expense and lost income.

*P.K.*

# jWIN®

Quality is Everything!™

2 Harbor Park Drive
Port Washington, NY 11050
Tel: 516-626-7188
Fax: 516-626-7105
www.jwin.com

**jWIN Electronics Corporation**

(d)        In case where the quality of finished products fails to meet jWIN specified requirements, jWIN shall have the right to withhold any pending payment due to the Vendor until the issue has been remedied. Otherwise, jWIN shall pay the Vendor for the services provided pursuant to this Agreement at the rates specified in the relevant Purchase Order, or otherwise agreed in writing by the parties hereto.

## V.        SUPPORT

(a)        To support jWIN's after sales support services, the Vendor shall provide one (1) % full product to support DOA service issue on each shipment within In-Warranty period. The Vendor is free from RMA and Refurbish. But, in case of that the Defect/Failure rate exceeds three (3) % occurred by the manufacturer's fault during In-Warranty period, the Vendor shall provide the penalty per unit for jWIN to repair or service, and the penalty shall be discussed between jWIN and Vendor. If jWIN requests additional Spare parts and Packing materials for repair and service, jWIN shall purchase the needed quantity three (3) months prior to shipment date with the agreed price by both parties under consideration of MOQ and Lead-Time. In case of Extended (Out Of) Warranty during two (2) years after In-Warranty period, jWIN and Vendor shall determine the separate forecast and order flexibility rule and purchase based on Out of Warranty Quotation agreed by both parties.

(b)        The Vendor shall provide jWIN with "After Sales Support" to jWIN for In-Warranty Period. In case of Product(s) EOL (End of Life), Vendor shall notify the EOL two (2) months prior to EOL date to jWIN. If Product(s) EOL is within In-Warranty Period, Vendor shall provide relevant support for jWIN's After Sales Support to end date of In-Warranty Period, but if EOL is out of In-Warranty Period, jWIN and Vendor shall discuss the further support plan and the support shall be paid by jWIN agreed by both parties.

(c)        The Vendor hereby agrees that version control over its products shall include written notification to jWIN, and further shall provide additional supporting materials, including parts list, and pricing in order to continue uninterrupted support of jWIN's after sales service efforts.

## VI.        LEAD TIME TO DELIVERY DATE

(a)        The Vendor hereby acknowledges that the time is of the essence in meeting reasonable lead time goals under this Agreement. To remove all doubt, the reasonable lead time is defined as the number of days from the date of jWIN's orders to the date of actual shipment of the Product(s)…twelve (12) weeks for the initial order and Eight (8) weeks under aforementioned rolling Forecast Rule.

(b)        If the Vendor can not meet the reasonable lead time requirement, the Vendor shall promptly inform jWIN of the delay in writing, and further, the Vendor shall endeavor to deliver the Products via expediting freight in order to minimize transit time and loss associated with the delay.   However, 1st week of the delay shall be taken as a waiver period and from 2nd week the delay shall be accountable. Also, the expedite freight cost of which Vendor shall take care will be the balance between general ocean freight cost and air freight cost.

(c)        If the Vendor fails to deliver the Products within the reasonable lead time requirement as specified in this section without notice to jWIN, such failure will be considered material breach of this Agreement. In the case of material breach, jWIN reserves the right to reject late delivery of the Products, engage another vendor to source similar products, and withhold payments from the Vendor, to satisfy the cost difference between this Agreement and that of the replacement.

(d)        Allowances: In case where the Vendor exceeds lead time requirement by fifteen (15) days or more, the Vendor shall deduct one percent (1%) from the total purchase price. In case where the Vendor exceeds the lead time requirement by thirty (30) days or more, the Vendor shall deduct two percent (2%) from the total purchase price

## VII.        CONFIDENTIALITY & INTELLECTUAL PROPERTY RIGHTS

(a) All intellectual property planned, developed or created prior to the date of this Agreement (the "Existing Intellectual Property") is and shall remain the property of the Party which made, developed or created or presently owns such Existing Intellectual Property and, unless otherwise expressed in this Agreement, no license is implied or granted herein to any Existing Intellectual Property.

(b) Any new intellectual property planned, developed or created by both Vendor and jWIN for use in, or in connection with, any jWIN Product(s) (the "Joint Intellectual Property") shall be the joint property of Vendor and jWIN. Each Party shall be free to use and exploit such Joint Intellectual Property without accounting to the other Party: provided that neither Party shall license the Joint Intellectual Property to, or use such Joint Intellectual Property for the benefit of, a third party (including a Competitor) without the written approval of the other Party. Only for All designs, plans and specifications for jWIN Products developed by both Vendor and jWIN shall be considered Joint Intellectual Property.

*P.K.*

Page 3 of 8

# jWIN®

Quality is Everything!™

2 Harbor Park Drive
Port Washington, NY 11050
Tel: 516-626-7188
Fax: 516-626-7105
www.jwin.com

**jWIN Electronics Corporation**

(c) The Parties agree to hold the Confidential Information in trust for each other and shall not use such Confidential Information without the prior written permission of the other Party. The Parties shall further ensure that its Related Companies do nothing which (if it were done by the Party would be a breach of this Agreement. The obligations of the Parties and their related Companies in this section shall continue indefinitely and survive the termination of this Agreement.

(d) Information provided by the Party to the other Party shall be treated as confidential material unless otherwise specified by the Party. Further, the Parties shall ensure that confidential information provided by the other Party shall be kept in strict confidence as the Party safeguards its own confidential information, and will not be discussed, published, or otherwise communicated to anyone without prior written authorization from the other Party

## VIII. INDEMNIFICATION AGREEMENT

Vendor agrees to hold harmless, indemnify, and defend jWIN Electronics Corporation., its affiliates, divisions, subsidiaries, successors and assignees and each of their officers, directors, shareholders, agents and employees (collectively "Customer") from and on demand reimburse the Customer for, any and all damages, losses and/or expenses (including attorneys' fee and other costs of defense) incurred in connection with any all suits, claims, demands, or liabilities whatsoever of every name and nature, both in law and equity, arising out of or resulting in any way from any actual or alleged defect in any Product(s)   provided by Vendor to Customer or from any act or omission, negligence or willful misconduct of the Vendor, its agents, employees, or subcontractors relating to the purchase or sale of any Products; or from any actual or alleged breach of any warranty, guarantee or certificate issued to Customer; or from any actual or alleged infringement of any patent, trademark, copyright, trade secret or other intellectual property right of a third party, or pertaining to or in connection with the design, manufacture, production, assembly, packaging, labeling, shipping, advertising or sale of any Products, derived form any demand, complaint, claim or legal action, whatsoever, from any source, alleging damage, death, illness to injury to any person or property resulting from the manufacture, purchase, sale, consumption and/or use of and Product by Vendor, its employees, agents or subcontractors, whether foreseen or unforeseen, provided that Vendor shall have no responsibility with respect to liability resulting solely from Customer's negligence of willful misconduct.

In the event of a claim, lawsuit or other matter covered by this Agreement, jWIN Electronics Corp. agrees to promptly notify Vendor in writing and Vendor shall have the opportunity to assume full responsibility for the defense and resolution of such claim, lawsuit or matter; provided however, that a) Vendor shall appoint counsel acceptable to Customer, b) Vendor, its agents, representatives, attorneys or insurers shall not bind Customer in settlement without its prior written consent, and c) Customer shall be permitted to participate in its own defense at its own expense.   If any claim shall be made against Customer alleging facts which, if true, would be a breach of any warranty or other agreement of Vendor, Customer shall have the right, upon reasonable investigation of and reasonable belief that such claim(s) are meritorious, to withhold from any payments due until resolution of such claims(s).

## IX. INSURANCE

Prior to the supply of any Goods, Vendor (for insurance purpose. its principal place of business is iCube America Corp. 2102 Business center drive, suite 155,IRVINE, CA 92612) , in order to cover its indemnification obligations, shall maintain at all times at its sole cost and expense at least the following insurance:

Commercial General Liability including but not limited to (i) injury to person, (ii) damage to property, (iii) contractual liability coverage, (iv) personal and advertising injury liability, (v) intellectual property infringement coverage, and (vi) products liability coverage, in an amount not less than Two Million Dollars ($2,000,000) for each occurrence listing jWIN, its affiliates and wholly-owned subsidiaries as additional insured.

The insurance requirements stated above may be met by a combination of the general liability and excess umbrella policies.   All insurance shall be issued by one or more insurance carriers licensed to do business in the state where services are rendered.   Upon execution of this Agreement and annually thereafter, Vendor shall provide jWIN with a Certificate of Insurance which shall indicate all insurance coverage required by the provisions herein and that jWIN will be provided with thirty (30) days written notice prior to substantial modification or cancellation of such policy (ies). Such Certificate of Insurance and notices shall be sent to: jWIN Electronics Corp. 2 HARBOR PARK DRIVE, Port Washington, NY 11050.

P.K.

# jWIN®

Quality is Everything!™

2 Harbor Park Drive
Port Washington, NY 11050
Tel: 516-626-7188
Fax: 516-626-7105
www.jwin.com

**jWIN Electronics Corporation**

**X.    DURATION OF AGREEMENT AND TERMINATION**

Except that otherwise provided below, this Agreement shall continue in effect for one (1) Year from the effective date of this Agreement. The Agreement shall automatically renew thereafter, until both parties mutually agree in writing to terminate the Agreement. This Agreement shall automatically renew for additional one (1) year, in case, both parties agree upon additional item(s) via Attachment. This Agreement, including any amendments, shall be reviewed annually. Both parties by mutual consent in writing may terminate this Agreement at any time

**XI.    NON SOLICITATION, OFFER OF EMPLOYMENT, OR GIFTS, ETC TO JWIN EMPLOYEES**

The Vendor hereby agrees that no offer of employment will be made to any jWIN employee while the above referenced Agreement is in effect, and further agree not to make any offer of employment, and the Vendor further agrees that it shall not enter into a business venture or any other business relationship with any jWIN employee while the above referenced Agreement is in effect, and further agrees not to do so for twelve (12) months after the termination of the Agreement. The Vendor hereby agrees that it shall not offer any payment, gifts, services, or favors to jWIN employee while the above referenced Agreement is in effect. The Vendor hereby agrees that this section is reasonable and reflects the desire of both parties to keep clear of any appearance of impropriety between both parties and its respective employees. To dispel all doubt, the Vendor hereby agrees that breach of this section shall be considered as material breach incapable of cure, remedy, or relief to jWIN. Further, the Vendor hereby agrees that breach of this addendum may not be adequately addressed by monetary compensation, therefore, jWIN reserves the right to seek equitable and monetary relief from a court of competent jurisdiction, including but not limited to temporary or permanent court order, monetary damages, punitive damages and other forms of relief available to jWIN.

**XII.    GOVERNING LAW AND ARBITRATION**

This Agreement and performance hereunder shall in all respects be governed by the laws of State of New York, U.S.A. Any controversy or claim arising out of relating to this Agreement or the breach thereof shall be settled exclusively by arbitration process effective in the State of New York.

**XIII.    VENDOR OBLIGATIONS, WARRANTIES, AND ASSURANCES**

As required by jWIN's customers, the Vendor and its designated 3rd party hereby acknowledge and agree that each is a lawfully registered entity, legally entitled to carry on its business endeavors. The Vendor and its designated 3rd party warrant that the Company and Product(s) are compliant with all relevant local, national and international rules, laws and regulations.   The Vendor and its designated 3rd party agree to hold harmless, indemnify jWIN for any and all damages, losses and/or expenses incurred from any act or omission, negligence or willful misconduct of the Vendor, its agent, employees, or subcontractors relating to the purchase or sale of the Product(s).

As required by jWIN's customers, the Vendor and its designated 3rd party hereby warrant that all employees engaged in the production of the Product(s) are at least sixteen (16) years of age, that they do not use involuntary or forced labor. The Vendor and its designated 3rd party shall fairly compensate their employees, providing wages and benefits that comply with the local and country laws, and comply with all applicable legal limits for working hours. The Vendor's and its designated 3rd party's employees must be employed, paid, promoted and terminated based on occupational ability and not based on personal characteristics or beliefs, and further the Vendor and its designated 3rd party will not tolerate nor condone physical, sexual, psychological or verbal harassment or abuse of any their employee. The Vendor and its designated 3rd party assure that they shall provide safe working environment to their employees, to prevent accidents and injury occurring in the course of work. If the Vendor and its designated 3rd party provide residential housing for employees, the Vendor and its designated 3rd party shall ensure the housing is healthy and safe in compliance with the local and country laws.

The Vendor acknowledges and agrees that the Product(s) provided to jWIN does not infringe on any copyright, trademark, and other intellectual property rights and interests of any other party. If the Product(s) is found to be infringing or a third party claim is initiated against jWIN, the Vendor shall indemnify and defend jWIN for all such claims brought by any third party, and hold jWIN harmless from any losses or damages. The Vendor shall, at its cost, choose to defend against such claims, or elect to provide jWIN with an acceptable replacement, or obtain permission or license to the intellectual property interests, or provide other ways for jWIN to continue its business without unreasonable interruptions, delays or shortages.

*P.K.*

# jWIN®

**Quality is Everything!™**

2 Harbor Park Drive
Port Washington, NY 11050
Tel: 516-626-7188
Fax: 516-626-7105
www.jwin.com

**jWIN Electronics Corporation**

XIV.    **NOTICE**

*Any notice herein provided for shall be deemed to have been duly given if the same is sent by registered or certified mail, return receipt requested, Federal Express or other courier service. In the case of notice to jWIN, it will have been duly given if the same is sent by registered or certified mail, return receipt requested, Federal Express or other courier service to its headquarters at 2 Harbor Park Drive, Port Washington, NY 11050. In the case of notice to the Vendor, it will have been duly given if the same is sent by registered mail or certified mail, return receipt requested, Federal Express or other courier service to its offices at 25F Specialty Construction Centre 395-70 Shindaebang-Dong, Dongjak-Gu, Seoul, 156-714, Korea.*

XV.    **WAIVER AND SEVERABILITY**

*The waiver of any aforementioned section(s) does not constitute future waiver of this or any other section(s). If any clause or provision of this Agreement is illegal, invalid or unenforceable under present or future laws effective during the Term, the remainder of this Agreement shall not be affected thereby.*

In witness whereof, the both parties hereto execute this Agreement below to the effective the day and year first above written.

iCube Corporation

BY: _P. Cho 趙_____
SIGNATURE

*Executive Vice President*
TITLE

*DEC 4, 2006*
DATE

jWIN Electronics Corporation

BY: _____
SIGNATURE

*President*

TITLE

*Nov 30, 2006*
DATE

*I.K.*

# jWIN®

**Quality is Everything!™**

2 Harbor Park Drive
Port Washington, NY 11050
Tel: 516-626-7188
Fax: 516-626-7105
www.jwin.com

**jWIN Electronics Corporation**

**EXHIBIT A**

## <u>Summary of Vendor Guidebook</u>

Please take note that below is a summary of the jWIN's Vendor Guidebook. jWIN shall provide the full version of the Vendor Guidebook to the Vendor prior to placing the Purchase Order. Any conflict between this summary and the full version of the Vendor Guidebook, the full version of the Guidebook shall prevail. Further, the Vendor is reminded that this summary as well as the Vendor Guidebook is an essential part of the Manufacturing Agreement between jWIN and the Vendor. Kindly execute the relevant pages from the Vendor Guidebook and return to jWIN within fifteen (15) business days of receipt of the Vendor Guidebook.

**1. Product Unit:** jWIN logo should have the ® on the unit. If jWIN requested color cannot be provided, the Vendor shall immediately inform and recommend alternative choices. jWIN requested silkscreen color must be followed, and all cosmetic samples **must be approved in writing** by jWIN before mass production is to be initiated. The Vendor shall use best efforts to meet jWIN set deadlines for any necessary changes to reduce the overall time-to-market.

**2. Instruction Manual:** The whole manual must be in booklet style with black print on white paper. Manuals must be in English, Spanish and Portuguese -- if translations are provided. The final manual **must be approved in writing** by jWIN before mass printing is initiated.

**3. Gift Box / Blister Packaging:** jWIN's Art Department shall provide designs and the Vendor must use the provided design without any change. All artwork, designs, and samples **must be approved in writing** by jWIN before mass printing / production is initiated.

**4. Master Carton:** All products after pack-up must use jWIN's or both parties agreed standard inner and master carton box and pass drop testing.

**5. UCC 128 Barcode Sticker:** Each product model must have its own UCC 128 barcode sticker. UCC 128 barcode label must be affixed to the side of the master carton box.

**6. Submission and Approval of Samples:** Prior to mass production, the Vendor must send proper samples to jWIN for approval. If not approved for any reason, the Vendor should send revised sample in the timely manner. Submission and Approval of Working Samples and Final/Production Samples should follow the Vendor Guidebook.

**7. Inspections:** The Vendor must follow the inspection agreed to between jWIN and the Vendor, and if the Vendor fails any of the inspection, the Vendor should do the commercially reasonable effort to resolve and pass it.

_p.K._

# jWIN®

Quality is Everything!™

2 Harbor Park Drive
Port Washington, NY 11050
Tel: 516-626-7188
Fax: 516-626-7105
www.jwin.com

**jWIN Electronics Corporation**

## Attachment A

**Product(s) and Territory:**

- **Product(s)** : i182 and i185

- **Territory:**

The Vendor agrees that jWIN will be the sole and exclusive buyer in America (North, South and Central) for distribution of the Products and that no other party or parties shall be permitted to purchase the Products from the Vendor in any form, with any modifications or design changes. All other countries shall be mutually agreed to by both jWIN and the Vendor for the purpose of the Market Territory.

P.K.

# Exhibit B

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Perry R. Clark
To Call Writer Directly:
415 439-1938
pclark@kirkland.com

555 California Street
San Francisco, California 94104

(415) 439-1400

www.kirkland.com

Facsimile:
415 439-1500
Facsimile:
(415) 439-1500

### September 25, 2007

*By Certified Mail and FedEx*

iCube Corporation
25F Specialty Construction Center
395-70 Shindaebang-Dong
Dongjak-Gu
Seoul 156-714
Korea

iCube America Corporation
2102 Business Center Drive #155
Irvine, CA 92612

Agent for Service of Process
iCube America Corp.
76 Mercantile Way 616
Ladera Ranch, CA 92694

Re:    <u>Notice of Demand for Arbitration and Intent to Arbitrate</u>

To Whom It May Concern:

    We represent jWIN Electronics Corporation ("jWIN"). jWIN hereby serves this notice of demand for arbitration and intent to arbitrate against iCube Corporation ("iCube") under New York Consolidated Civil Practice Law and Rule 7503(c). This notice is made pursuant to the November 30, 2006, ODM Supply Agreement between jWIN and iCube (enclosed). The party making this demand is jWIN Corporation, 2 Harbor Park Drive, Port Washington, New York, NY 11050. As required by New York Consolidated Civil Practice Law and Rule 7503(c), jWIN states that "unless the party served [iCube] applies to stay the arbitration within twenty days after such service, he shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time."

Very truly yours,

Perry R. Clark

# jWIN®

**Quality is Everything!™**

2 Harbor Park Drive
Port Washington, NY 11050
Tel: 516-626-7188
Fax: 516-626-7105
www.jwin.com

**jWIN Electronics Corporation**

## ODM Supply Agreement

This Agreement is made and entered into 30 day of _Nov_ , 200 by and between jWIN Electronics Corporation., a New York company, having its principal place of business at 2 Harbor Park Drive, Port Washington, NY 11050 (hereinafter referred to as "jWIN" or the "Company") and iCube Corporation (the "Vendor" or "iCube") having the principal place of business at _25F Specialty Construction Center, 395-70 Shindaebang-Dong, Dongjak-Gu, Seoul 156-714, Korea_. In consideration of the promises and mutual covenants and agreements herein contained, the parties hereto agree as follows:

## RECITALS

WHEREAS, jWIN proposes to obtain custom manufactured consumer electronics products, accessories, and other related goods as specified from time to time from the Vendor; and

WHEREAS, Vendor proposes to procure, fabricate, and manufacture consumer electronics products, accessories, and other related goods as specified from time to time at its or its 3rd party's facilities, utilizing design and quality inputs supplied by jWIN or proposed by the Vendor.

In case where the terms and conditions of the Purchase Order conflict with the terms and conditions of this Agreement, the terms and conditions of the Purchase Order shall prevail.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, jWIN and Vendor hereby covenant and agree as follows:

I.    **jWIN ELECTRONICS CORPORATION PROJECT**
      It is agreed that Vendor shall manufacture the product(s) (hereafter referred to 'Product(s)') as specified in the Attachment A, and related parts and accessories and After Sales Services exclusively in the territories for jWIN.

II.   **MARKET TERRITORY**
      Refer to the Attachment A for a complete list of territory and products information.

III.  **QUALITY RELATED TERMS**
      (a)      jWIN and the Vendor together shall determine the quality requirements under this Agreement as defined by technical documents (drawing, diagrams, etc). The Vendor acknowledges that jWIN built up a market reputation for providing quality products, and shall use best efforts to meet jWIN's expectations to provide the highest quality products. jWIN provided Vendor Guidebook is hereby incorporated and made a part of this Agreement as Exhibit A.
      (b)      Rules and standards: MIL 105 standard 1050 level II.
      (c)      AQL:      Critical = 0;      Major =1.0;      Minor = 2.5.
      (d)      The Vendor shall provide reference sample(s) to jWIN for approval on timely basis, and follow through on jWIN requests for changes and shall cooperate fully with jWIN to reduce the lead-time from Purchase Order to Delivery date. The Vendor shall timely provide relevant documentations requested by jWIN for jWIN's review.
      (e)      Any changes or modifications to the sample(s) and Product(s) shall be mutually agreed to by both jWIN and the Vendor in writing as stated in this Agreement, and accordingly the Vendor shall supply new documentations reflecting changes in a timely manner.
      (f)      The Vendor agrees that all required regulatory approvals and certifications, including but not limited to: CE, FCC and UL have been obtained and are current and that the Vendor shall supply jWIN with supporting documents upon request. If required, the Vendor shall obtain, procure or secure appropriate regulatory approvals, certifications, licenses, etc. The Vendor guarantees and warrants to jWIN that the contractual goods comply with all government standards and requirements. The Vendor guarantees and warrants that the contractual goods comply with non-related third parties permissions, licenses, or certifications as applicable to the Product. The cost to get the aforementioned needed

P.K.

# jWIN®

Quality is Everything!™

2 Harbor Park Drive
Port Washington, NY 11050
Tel: 516-626-7188
Fax: 516-626-7105
www.jwin.com

**jWIN Electronics Corporation**

certifications and/or regulatory approvals except FCC, UL and CUL shall be paid by jWIN. The Vendor shall at its cost obtain, procure or secure appropriate regulatory approvals, certifications, licenses such as FCC, UL and CUL.

(g)      jWIN may execute the Incoming Inspection within thirty (30) calendar days after the custom clearance date. If the Product is found not to comply with jWIN's AQL during that period, jWIN may request the Vendor to take the Incoming Inspection of the Product(s) of a specific lot of merchandise thoroughly on expedited basis.

(h)      Overall failure rate over five (5) % of the total of the Product(s) shall be considered a Catastrophic Failure. The related cost to repair a Catastrophic Failure shall be the responsibility of Vendor, including transportation, labor and parts. If the Vendor and jWIN cannot come to an agreement regarding quality of a specific lot of merchandise, then a neutral and independent party shall be asked to inspect the lot in question, and the cost of third party service shall be paid by the party whose assessment of the quality of the lot was incorrect.

(i)      The Vendor shall not replace, switch, or source inferior quality components to manufacture the Product(s) without prior written notice to jWIN. If in case inferior quality components are discovered in finished Product(s), jWIN reserves the right to cancel this Agreement for breach, withhold any pending payment, and require the Vendor, at its cost, to recall the Product(s) worldwide and either replace the whole Product unit, OR at its cost, replace the inferior quality components and arrange to ship back to consumers. In case the Vendor refuses to remedy, or otherwise fails to cure breach of this section, jWIN shall reserve the right to recall the Product(s) worldwide, engage another manufacturer to replace the inferior quality components, and ship the refurbished Product(s) to consumers, for all of which jWIN shall seek compensation from the Vendor. jWIN shall also be entitled to receive treble damages from the Vendor in case of a breach and failure to remedy such breach within thirty (30) days of written notification from jWIN. The damages under this Section shall be the sum of the cost of recalling the Product(s) worldwide, fee(s) associated with engaging another manufacturer to replace inferior quality components, shipping cost to send the repaired Product(s) to consumers, and any loss of profit suffered by jWIN due to the breach.

(j)      If vendor and jWIN cannot come to an agreement regarding quality of a specific lot of merchandise, then a neutral and independent party shall be asked to inspect the lot in question, and the cost of third party service shall be paid by the party whose assessment of the quality of the lot was incorrect.

(k)      The Vendor acknowledges and agrees that passing of Sample Quality Inspection neither relinquish nor diminish vendor's obligations to provide and honor Warranty and Support in its entirety.

(l)      The vendor hereby acknowledges and accepts that it shall not offer to give any gifts or payment to jWIN employee(s) performing inspections and quality testing, in order to avoid any impropriety or appearance of impropriety.

(m)      Failed Quality Inspection Charge Schedule: To ensure the quality of the Products, and to prevent jWIN's Quality Control Team from making unnecessary inspection visits, jWIN and the Vendor hereby agree to the following charges:

| Inspection Visit | Type of Failure(s) | Charge / Penalty |
|---|---|---|
| First Inspection | No Products Ready for inspection | HK$500.00 |
| Second Inspection | Failed Quality Inspection, Requiring Third Visit | HK$1,000.00 (plus air fare + hotel) |
| Third Inspection | Failed Second Inspection, Requiring    Another Visit | HK$2,000.00 (plus air fare + hotel) |
| Final Inspection | Failed Quality Inspection | Cancellation of related Purchase Order |

IV.      **WARRANTY**

(a)      Vendor warrants to jWIN that all Products purchased by jWIN hereunder meet the specifications agreed by both parties and are free from failure or defect in workmanship and materials. The warranty applied for a period of twelve (12) months ("In-Warranty period") from the shipment date. jWIN and Vendor shall determine the Major Defect/Failure according to the Product Specification agreed by both parties, and those shall be limited to the matters of Product(s) Functionality and Cosmetics. Also, the expense shall be limited to the amount proved by real expenditure.

(b)      If, during the aforesaid Warranty Period, jWIN identifies any failure or defect that contributed by vendor including but limited to design, software, component, and / or  manufacture of the product, jWIN shall give vendor a written notice thereof, setting forth the nature of failure and/or defect. The parties agree to thereafter negotiate in good faith to replace, repair or otherwise correct such defective product. [Expect Provision under Warranty Section (c)]

(c)      At any time jWIN identifies any major defect or failure that contributed by vendor including but limited to design, software, component, and / or manufacture of product, jWIN reserves the right to return the defective units to vendor for full refund. Refund must also include but not limited all cost attributed to transportation and other expense and lost income.

*P.K.*

# jWIN®

Quality is Everything!™

2 Harbor Park Drive
Port Washington, NY 11050
Tel: 516-626-7188
Fax: 516-626-7105

**jWIN Electronics Corporation**                                   www.jwin.com

(d)     In case where the quality of finished products fails to meet jWIN specified requirements, jWIN shall have the right to withhold any pending payment due to the Vendor until the issue has been remedied. Otherwise, jWIN shall pay the Vendor for the services provided pursuant to this Agreement at the rates specified in the relevant Purchase Order, or otherwise agreed in writing by the parties hereto.

**V.      SUPPORT**

(a)     To support jWIN's after sales support services, the Vendor shall provide one (1) % full product to support DOA service issue on each shipment within In-Warranty period. The Vendor is free from RMA and Refurbish. But, in case of that the Defect/Failure rate exceeds three (3) % occurred by the manufacturer's fault during In-Warranty period, the Vendor shall provide the penalty per unit for jWIN to repair or service, and the penalty shall be discussed between jWIN and Vendor. If jWIN requests additional Spare parts and Packing materials for repair and service, jWIN shall purchase the needed quantity three (3) months prior to shipment date with the agreed price by both parties under consideration of MOQ and Lead-Time. In case of Extended (Out Of) Warranty during two (2) years after In-Warranty period, jWIN and Vendor shall determine the separate forecast and order flexibility rule and purchase based on Out of Warranty Quotation agreed by both parties.

(b)     The Vendor shall provide jWIN with "After Sales Support" to jWIN for In-Warranty Period. In case of Product(s) EOL (End of Life), Vendor shall notify the EOL two (2) months prior to EOL date to jWIN. If Product(s) EOL is within In-Warranty Period, Vendor shall provide relevant support for jWIN's After Sales Support to end date of In-Warranty Period, but if EOL is out of In-Warranty Period, jWIN and Vendor shall discuss the further support plan and the support shall be paid by jWIN agreed by both parties.

(c)     The Vendor hereby agrees that version control over its products shall include written notification to jWIN, and further shall provide additional supporting materials, including parts list, and pricing in order to continue uninterrupted support of jWIN's after sales service efforts.

**VI.     LEAD TIME TO DELIVERY DATE**

(a)     The Vendor hereby acknowledges that the time is of the essence in meeting reasonable lead time goals under this Agreement. To remove all doubt, the reasonable lead time is defined as the number of days from the date of jWIN's orders to the date of actual shipment of the Product(s)…twelve (12) weeks for the initial order and Eight (8) weeks under aforementioned rolling Forecast Rule.

(b)     If the Vendor can not meet the reasonable lead time requirement, the Vendor shall promptly inform jWIN of the delay in writing, and further, the Vendor shall endeavor to deliver the Products via expediting freight in order to minimize transit time and loss associated with the delay.   However, 1st week of the delay shall be taken as a waiver period and from 2nd week the delay shall be accountable. Also, the expedite freight cost of which Vendor shall take care will be the balance between general ocean freight cost and air freight cost.

(c)     If the Vendor fails to deliver the Products within the reasonable lead time requirement as specified in this section without notice to jWIN, such failure will be considered material breach of this Agreement. In the case of material breach, jWIN reserves the right to reject late delivery of the Products, engage another vendor to source similar products, and withhold payments from the Vendor, to satisfy the cost difference between this Agreement and that of the replacement.

(d)     Allowances: In case where the Vendor exceeds lead time requirement by fifteen (15) days or more, the Vendor shall deduct one percent (1%) from the total purchase price. In case where the Vendor exceeds the lead time requirement by thirty (30) days or more, the Vendor shall deduct two percent (2%) from the total purchase price

**VII.    CONFIDENTIALITY & INTELLECTUAL PROPERTY RIGHTS**

(a) All intellectual property planned, developed or created prior to the date of this Agreement (the "Existing Intellectual Property") is and shall remain the property of the Party which made, developed or created or presently owns such Existing Intellectual Property and, unless otherwise expressed in this Agreement, no license is implied or granted herein to any Existing Intellectual Property.

(b) Any new intellectual property planned, developed or created by both Vendor and jWIN for use in, or in connection with, any jWIN Product(s) (the "Joint Intellectual Property") shall be the joint property of Vendor and jWIN. Each Party shall be free to use and exploit such Joint Intellectual Property without accounting to the other Party: provided that neither Party shall license the Joint Intellectual Property to, or use such Joint Intellectual Property for the benefit of, a third party (including a Competitor) without the written approval of the other Party. Only for All designs, plans and specifications for jWIN Products developed by both Vendor and jWIN shall be considered Joint Intellectual Property.

*P.K.*

# jWIN®

Quality is Everything!™

2 Harbor Park Drive
Port Washington, NY 11050
Tel: 516-626-7188
Fax: 516-626-7105
www.jwin.com

**jWIN Electronics Corporation**

(c) The Parties agree to hold the Confidential Information in trust for each other and shall not use such Confidential Information without the prior written permission of the other Party. The Parties shall further ensure that its Related Companies do nothing which (if it were done by the Party would be a breach of this Agreement. The obligations of the Parties and their related Companies in this section shall continue indefinitely and survive the termination of this Agreement.

(d) Information provided by the Party to the other Party shall be treated as confidential material unless otherwise specified by the Party. Further, the Parties shall ensure that confidential information provided by the other Party shall be kept in strict confidence as the Party safeguards its own confidential information, and will not be discussed, published, or otherwise communicated to anyone without prior written authorization from the other Party

## VIII.   INDEMNIFICATION AGREEMENT

Vendor agrees to hold harmless, indemnify, and defend jWIN Electronics Corporation., its affiliates, divisions, subsidiaries, successors and assignees and each of their officers, directors, shareholders, agents and employees (collectively "Customer") from and on demand reimburse the Customer for, any and all damages, losses and/or expenses (including attorneys' fee and other costs of defense) incurred in connection with any all suits, claims, demands, or liabilities whatsoever of every name and nature, both in law and equity, arising out of or resulting in any way from any actual or alleged defect in any Product(s)   provided by Vendor to Customer or from any act or omission, negligence or willful misconduct of the Vendor, its agents, employees, or subcontractors relating to the purchase or sale of any Products; or from any actual or alleged breach of any warranty, guarantee or certificate issued to Customer; or from any actual or alleged infringement of any patent, trademark, copyright, trade secret or other intellectual property right of a third party, or pertaining to or in connection with the design, manufacture, production, assembly, packaging, labeling, shipping, advertising or sale of any Products, derived form any demand, complaint, claim or legal action, whatsoever, from any source, alleging damage, death, illness to injury to any person or property resulting from the manufacture, purchase, sale, consumption and/or use of and Product by Vendor, its employees, agents or subcontractors, whether foreseen or unforeseen, provided that Vendor shall have no responsibility with respect to liability resulting solely from Customer's negligence of willful misconduct.

In the event of a claim, lawsuit or other matter covered by this Agreement, jWIN Electronics Corp. agrees to promptly notify Vendor in writing and Vendor shall have the opportunity to assume full responsibility for the defense and resolution of such claim, lawsuit or matter; provided however, that a) Vendor shall appoint counsel acceptable to Customer, b) Vendor, its agents, representatives, attorneys or insurers shall not bind Customer in settlement without its prior written consent, and c) Customer shall be permitted to participate in its own defense at its own expense.   If any claim shall be made against Customer alleging facts which, if true, would be a breach of any warranty or other agreement of Vendor, Customer shall have the right, upon reasonable investigation of and reasonable belief that such claim(s) are meritorious, to withhold from any payments due until resolution of such claims(s).

## IX.    INSURANCE

Prior to the supply of any Goods, Vendor (for insurance purpose. its principal place of business is iCube America Corp. 2102 Business center drive, suite 155,IRVINE, CA 92612) , in order to cover its indemnification obligations, shall maintain at all times at its sole cost and expense at least the following insurance:

Commercial General Liability including but not limited to (i) injury to person, (ii) damage to property, (iii) contractual liability coverage, (iv) personal and advertising injury liability, (v) intellectual property infringement coverage, and (vi) products liability coverage, in an amount not less than Two Million Dollars ($2,000,000) for each occurrence listing jWIN, its affiliates and wholly-owned subsidiaries as additional insured.

The insurance requirements stated above may be met by a combination of the general liability and excess umbrella policies.   All insurance shall be issued by one or more insurance carriers licensed to do business in the state where services are rendered.   Upon execution of this Agreement and annually thereafter, Vendor shall provide jWIN with a Certificate of Insurance which shall indicate all insurance coverage required by the provisions herein and that jWIN will be provided with thirty (30) days written notice prior to substantial modification or cancellation of such policy (ies). Such Certificate of Insurance and notices shall be sent to: jWIN Electronics Corp. 2 HARBOR PARK DRIVE, Port Washington, NY 11050.

P.K.

# jWIN®

Quality is Everything!™

2 Harbor Park Drive
Port Washington, NY 11050
Tel: 516-626-7188
Fax: 516-626-7105
www.jwin.com

**jWIN Electronics Corporation**

X.    **DURATION OF AGREEMENT AND TERMINATION**
Except that otherwise provided below, this Agreement shall continue in effect for one (1) Year from the effective date of this Agreement. The Agreement shall automatically renew thereafter, until both parties mutually agree in writing to terminate the Agreement. This Agreement shall automatically renew for additional one (1) year, in case, both parties agree upon additional item(s) via Attachment. This Agreement, including any amendments, shall be reviewed annually. Both parties by mutual consent in writing may terminate this Agreement at any time

XI.    **NON SOLICITATION, OFFER OF EMPLOYMENT, OR GIFTS, ETC TO JWIN EMPLOYEES**
The Vendor hereby agrees that no offer of employment will be made to any jWIN employee while the above referenced Agreement is in effect, and further agree not to make any offer of employment, and the Vendor further agrees that it shall not enter into a business venture or any other business relationship with any jWIN employee while the above referenced Agreement is in effect, and further agrees not to do so for twelve (12) months after the termination of the Agreement. The Vendor hereby agrees that it shall not offer any payment, gifts, services, or favors to jWIN employee while the above referenced Agreement is in effect. The Vendor hereby agrees that this section is reasonable and reflects the desire of both parties to keep clear of any appearance of impropriety between both parties and its respective employees. To dispel all doubt, the Vendor hereby agrees that breach of this section shall be considered as material breach incapable of cure, remedy, or relief to jWIN. Further, the Vendor hereby agrees that breach of this addendum may not be adequately addressed by monetary compensation, therefore, jWIN reserves the right to seek equitable and monetary relief from a court of competent jurisdiction, including but not limited to temporary or permanent court order, monetary damages, punitive damages and other forms of relief available to jWIN.

XII.    **GOVERNING LAW AND ARBITRATION**
This Agreement and performance hereunder shall in all respects be governed by the laws of State of New York, U.S.A. Any controversy or claim arising out of relating to this Agreement or the breach thereof shall be settled exclusively by arbitration process effective in the State of New York.

XIII.    **VENDOR OBLIGATIONS, WARRANTIES, AND ASSURANCES**
As required by jWIN's customers, the Vendor and its designated 3rd party hereby acknowledge and agree that each is a lawfully registered entity, legally entitled to carry on its business endeavors. The Vendor and its designated 3rd party warrant that the Company and Product(s) are compliant with all relevant local, national and international rules, laws and regulations.  The Vendor and its designated 3rd party agree to hold harmless, indemnify jWIN for any and all damages, losses and/or expenses incurred from any act or omission; negligence or willful misconduct of the Vendor, its agent, employees, or subcontractors relating to the purchase or sale of the Product(s).
As required by jWIN's customers, the Vendor and its designated 3rd party hereby warrant that all employees engaged in the production of the Product(s) are at least sixteen (16) years of age, that they do not use involuntary or forced labor. The Vendor and its designated 3rd party shall fairly compensate their employees, providing wages and benefits that comply with the local and country laws, and comply with all applicable legal limits for working hours. The Vendor's and its designated 3rd party's employees must be employed, paid, promoted and terminated based on occupational ability and not based on personal characteristics or beliefs, and further the Vendor and its designated 3rd party will not tolerate nor condone physical, sexual, psychological or verbal harassment or abuse of any their employee. The Vendor and its designated 3rd party assure that they shall provide safe working environment to their employees, to prevent accidents and injury occurring in the course of work. If the Vendor and its designated 3rd party provide residential housing for employees, the Vendor and its designated 3rd party shall ensure the housing is healthy and safe in compliance with the local and country laws.
The Vendor acknowledges and agrees that the Product(s) provided to jWIN does not infringe on any copyright, trademark, and other intellectual property rights and interests of any other party. If the Product(s) is found to be infringing or a third party claim is initiated against jWIN, the Vendor shall indemnify and defend jWIN for all such claims brought by any third party, and hold jWIN harmless from any losses or damages. The Vendor shall, at its cost, choose to defend against such claims, or elect to provide jWIN with an acceptable replacement, or obtain permission or license to the intellectual property interests, or provide other ways for jWIN to continue its business without unreasonable interruptions, delays or shortages.

# jWIN®

Quality is Everything!™

2 Harbor Park Drive
Port Washington, NY 11050
Tel: 516-626-7188
Fax: 516-626-7105
www.jwin.com

**jWIN Electronics Corporation**

XIV.  **NOTICE**

Any notice herein provided for shall be deemed to have been duly given if the same is sent by registered or certified mail, return receipt requested, Federal Express or other courier service. In the case of notice to jWIN, it will have been duly given if the same is sent by registered or certified mail, return receipt requested, Federal Express or other courier service to its headquarters at 2 Harbor Park Drive, Port Washington, NY 11050. In the case of notice to the Vendor, it will have been duly given if the same is sent by registered mail or certified mail, return receipt requested, Federal Express or other courier service to its offices at 25F Specialty Construction Centre 395-70 Shindaebang-Dong, Dongjak-Gu, Seoul, 156-714, Korea.

XV.  **WAIVER AND SEVERABILITY**

The waiver of any aforementioned section(s) does not constitute future waiver of this or any other section(s). If any clause or provision of this Agreement is illegal, invalid or unenforceable under present or future laws effective during the Term, the remainder of this Agreement shall not be affected thereby.

In witness whereof, the both parties hereto execute this Agreement below to the effective the day and year first above written.

iCube Corporation

BY: _____

SIGNATURE

_Executive Vice President_

TITLE

_DEC 4, 2006_

DATE

jWIN Electronics Corporation

BY: _____

SIGNATURE

_president_

TITLE

_Nov 30, 2006_

DATE

# jWIN®

Quality is Everything!™

2 Harbor Park Drive
Port Washington, NY 11050
Tel: 516-626-7188
Fax: 516-626-7105
www.jwin.com

**jWIN Electronics Corporation**

EXHIBIT A

### Summary of Vendor Guidebook

Please take note that below is a summary of the jWIN's Vendor Guidebook. jWIN shall provide the full version of the Vendor Guidebook to the Vendor prior to placing the Purchase Order. Any conflict between this summary and the full version of the Vendor Guidebook, the full version of the Guidebook shall prevail. Further, the Vendor is reminded that this summary as well as the Vendor Guidebook is an essential part of the Manufacturing Agreement between jWIN and the Vendor. Kindly execute the relevant pages from the Vendor Guidebook and return to jWIN within fifteen (15) business days of receipt of the Vendor Guidebook.

**1. Product Unit:** jWIN logo should have the ® on the unit. If jWIN requested color cannot be provided, the Vendor shall immediately inform and recommend alternative choices. jWIN requested silkscreen color must be followed, and all cosmetic samples must be approved in writing by jWIN before mass production is to be initiated. The Vendor shall use best efforts to meet jWIN set deadlines for any necessary changes to reduce the overall time-to-market.

**2. Instruction Manual:** The whole manual must be in booklet style with black print on white paper. Manuals must be in English, Spanish and Portuguese – if translations are provided. The final manual must be approved in writing by jWIN before mass printing is initiated.

**3. Gift Box / Blister Packaging:** jWIN's Art Department shall provide designs and the Vendor must use the provided design without any change. All artwork, designs, and samples must be approved in writing by jWIN before mass printing / production is initiated.

**4. Master Carton:** All products after pack-up must use jWIN's or both parties agreed standard inner and master carton box and pass drop testing.

**5. UCC 128 Barcode Sticker:** Each product model must have its own UCC 128 barcode sticker. UCC 128 barcode label must be affixed to the side of the master carton box.

**6. Submission and Approval of Samples:** Prior to mass production, the Vendor must send proper samples to jWIN for approval. If not approved for any reason, the Vendor should send revised sample in the timely manner. Submission and Approval of Working Samples and Final/Production Samples should follow the Vendor Guidebook.

**7. Inspections:** The Vendor must follow the inspection agreed to between jWIN and the Vendor, and if the Vendor fails any of the inspection, the Vendor should do the commercially reasonable effort to resolve and pass it.

*D.K.*

# jWIN®

Quality is Everything!™

2 Harbor Park Drive
Port Washington, NY 11050
Tel: 516-626-7188
Fax: 516-626-7105
www.jwin.com

**jWIN Electronics Corporation**

<u>Attachment A</u>

Product(s) and Territory:

- Product(s) : i182 and i185

- Territory:

The Vendor agrees that jWIN will be the sole and exclusive buyer in America (North, South and Central) for distribution of the Products and that no other party or parties shall be permitted to purchase the Products from the Vendor in any form, with any modifications or design changes. All other countries shall be mutually agreed to by both jWIN and the Vendor for the purpose of the Market Territory.

*P.K.*

# Exhibit C

FedEx package to Korea was delivered:

FedEx | Track - Microsoft Internet Explorer

File   Edit   View   Favorites   Tools   Help

Back            Search      Folders      Favorites

Address  http://www.fedex.com/Tracking/Detail?ftc_start_url=&totalPieceNum=&backTo=&template_type=print&cntry_code=us&language=

Track Shipments/FedEx Kinko's Orders

## Detailed Results

Quick Help

| | | | |
|---|---|---|---|
| **Tracking number** | 855457211343 | **Destination** | DONGJAK-GU KR |
| **Signed for by** | .LIM HYE JIN | **Delivered to** | Receptionist/Front Desk |
| **Ship date** | Sep 25, 2007 | | |
| **Delivery date** | Sep 28, 2007 3:28 PM | **Service type** | Priority Envelope |
| | | **Weight** | 1.0 lbs. |
| **Status** | Delivered | | |
| **Signature image available** | Yes | | |

| Date/Time | | Activity | Location | Details |
|---|---|---|---|---|
| **Sep 28, 2007** | 3:28 PM | **Delivered** | DONGJAK-GU KR | |
| | 9:20 AM | On FedEx vehicle for delivery | SEOUL-SI YEONGDEUNGPO-GU KR | |
| | 8:48 AM | At local FedEx facility | SEOUL-SI YEONGDEUNGPO-GU KR | |
| **Sep 27, 2007** | 9:22 PM | In transit | SEOUL-SI YEONGDEUNGPO-GU KR | |
| | 3:20 PM | Int'l shipment release | INCHEON KR | |
| **Sep 26, 2007** | 6:17 AM | Arrived at FedEx location | ANCHORAGE, AK | |
| | 1:51 AM | Departed FedEx location | OAKLAND, CA | |
| **Sep 25, 2007** | 9:23 PM | Left origin | SAN FRANCISCO, CA | |
| | 5:39 PM | Picked up | SAN FRANCISCO, CA | |

[ Signature proof ]   [ E-mail results ]   [ Track more shipments/orders ]

Subscribe to tracking updates (optional)

**Your Name:** [                    ]   **Your E-mail Address:** [                    ]

Done

start       FedEx | Track - Mo...    New Memo - IBM L...    FedEx | Track - Mo...